1
2
3
4  UNITED STATES DISTRICT COURT
5  NORTHERN DISTRICT OF CALIFORNIA
6

7  MARY ZEKRY ALLEN,

   Plaintiff,
8
9  v.
10 NANCY A. BERRYHILL,
11 Defendant.

Case No. 17-cv-03414-HSG

**ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 10, 14

12
13      Defendant Nancy A. Berryhill is the Acting Commissioner of the Social Security
14 Administration ("SSA"). The former Acting Commissioner, Carolyn Colvin, acting in her official
15 capacity, denied Plaintiff Mary Zekry Allen's application for disability insurance benefits
16 ("DIB"). *See* Dkt. No. 1. Plaintiff seeks judicial review of that decision. *Id.* On September 15,
17 2017, Defendant lodged the administrative record with the Court. Dkt. No. 8 ("AR"). Plaintiff
18 filed her motion for summary judgment on October 16, 2017, Dkt. No. 10 ("Pl. Mot."); Defendant
19 filed a cross-motion for summary judgment and opposition on December 14, 2017, Dkt. No. 26
20 ("Def. Mot."). The Court finds that this matter is appropriate for disposition without oral
21 argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). For the reasons set forth
22 below, the Court **DENIES** Plaintiff's motion for summary judgment and **GRANTS** Defendant's
23 motion for summary judgment.

24 **I.  BACKGROUND**

25    **A.  Factual Background**

26      Plaintiff was born in 1963. AR 43. She completed high school and two years of college
27 and worked as a caregiver and supervisor in electronics production. AR 89. The onset of
28 Plaintiff's alleged disability was January 1, 2011, AR 265, which she later amended to May 12,

2013.  AR 43.  In 2011, Plaintiff was demoted from her role as a supervisor at her job and was given an "assembly work" type role instead.  AR 882.  Plaintiff was terminated from her employment in 2012.  AR 874.

### 1.  Plaintiff's Medical Condition

Plaintiff alleges that she suffers from chronic neck and upper back pain and fibromyalgia, which is a disorder characterized by widespread musculoskeletal pain.  *See* AR 838, 847.  She stated that she had ceased working by the onset of her disability.  AR 22.  Plaintiff testified that fibromyalgia makes her feel fatigued everywhere and that her body is always throbbing.  AR 44.  She feels pain everywhere in her body and has headaches every day.  AR 47.  Plaintiff claims that she can sit without moving for only 20 to 30 minutes, although she says even that is still painful, and she can stand without moving for only 10 to 15 minutes.  AR 49–50.  She can only walk for 10 minutes until her right hip starts hurting.  AR 50.  Plaintiff testified that she normally can lift a maximum of 5 pounds, but sometimes she can lift "heavier stuff" because she does not "want to be crippled," although she would "pay for it later" since that would increase her pain.  *Id*.  Even then, Plaintiff claimed she has difficulty holding things in front of her and has to hold them against her body so the weight is not as heavy on her elbows.  *Id*.  Plaintiff testified that she had a lot of pain starting from around 1992, but she did the "best [she] could" to manage her limitations and be able to work for the many years after.  AR 54.  She testified that she could not do any sort of job, even a cashier position, because there is "pain all the time."  AR 86.

Plaintiff lives with her husband, who does the vacuuming and laundry because vacuuming makes it feel like there are "sharp things" going through her arm.  AR 51.  She cooks twice a week.  AR 51.  On an average day, Plaintiff testified that she was able to do errands such as pay her bills on her iPad, check her email, and drive for around 20 to 30 minutes.  AR 52.  Plaintiff goes to physical therapy to treat her condition and does a "lot of exercise, stretches."  AR 77.

### 2.  Plaintiff's Physicians

#### a.  <u>Dr. Sunita Jayakar, M.D.</u>

Dr. Sunita Jayakar, M.D., Plaintiff's attending physician, and her colleagues have been seeing Plaintiff since around 2009.  AR 895.  Back in December 2009, Dr. Jayakar had given

Plaintiff an impairment rating of "Permanent and Stationary" based on an examination of her cervical spine and bilateral upper extremities. AR 894. At the time of the 2009 rating, Plaintiff told Dr. Jayakar that she had a work-related bilateral upper extremity injury from 10 years ago, but her symptoms had "decreased 90%, after physical therapy and acupuncture treatments." AR 895.

On April 6, 2011, Dr. Jayakar treated Plaintiff, after last examining her in December 2010. AR 892. She did not find any "significant change" in her findings with respect to cervical and upper extremity symptoms, and found that Plaintiff's primary problem was the "underlying stress and pressure" from work. AR 893. Dr. Jayakar saw Plaintiff again on November 2, 2011, and noted no change. AR 888. On December 14, 2011, Dr. Jayakar examined Plaintiff and her diagnostic impressions were that Plaintiff had cervical myofascial pain involving her left trapezius muscle, left shoulder rotator cuff tendonitis, and left upper extremity strain. AR 882. Plaintiff underwent an MRI scan of her left shoulder on December 22, 2011, and the MRI revealed that there was no evidence of rotator cuff tear. AR 879. Dr. Jayakar also found that Plaintiff's symptoms had improved. *Id*.

Dr. Jayakar continued to examine Plaintiff throughout 2012 and 2013 and did not find any significant physical changes. *See* AR 863–80. She found that Plaintiff was capable of returning to her job, with certain work restrictions. *See, e.g.*, AR 880 (finding on January 4, 2012 that Plaintiff was able to return to her usual and customary job), AR 866 (same finding on January 16, 2013), AR 872 (finding on May 2, 2012 that Plaintiff was capable of working but should limit overhead pulling and pushing activities). On April 4, 2012, Dr. Jayakar found that Plaintiff had full range of motion in her left shoulder and full range of cervical motion. AR 873. To help Plaintiff's complaints of pain, Dr. Jayakar recommended Plaintiff undergo physical therapy and prescribed her Lidoderm patches. *See* AR 876. Dr. Jayakar also opined that Plaintiff's complaints were more "psychiatric in nature with underlying depression and stress" related to her dissatisfaction with her work and employer. *See* AR 873–74. Dr. Jayakar noted that she was not exactly sure "how to separate [Plaintiff's] physical pain from her psychological status." AR 865.

On May 8, 2013, Dr. Jayakar again found there were no significant changes in her clinical findings and recommended permanent work restrictions of no repetitive pinching, gripping or

3

torqueing with her hands, lifting maximum weight of 5 pounds, and pushing and pulling limited to 25 pounds. AR 859–60. Dr. Jayakar reported that Plaintiff had a qualified medical evaluation and the evaluating doctor advised her to return back to her usual and customary job, but Plaintiff "feels that she is unable to." AR 859. Dr. Jayakar also completed an impairment questionnaire on May 8, 2013. AR 1163. In that questionnaire, Dr. Jayakar checked that in an 8-hour work day, Plaintiff could sit for only 3 hours, and walk or stand for only 1 hour. AR 1165. On January 8, 2014, Dr. Jayakar completed a functional capacity questionnaire, but this time opined that Plaintiff could sit and stand for a total of 4 hours in an 8-hour work day, and, consistent with previous findings, concluded that Plaintiff was unable to do repetitive hand motions, heavy lifting, and repetitive pulling, pushing, or overhead activities. AR 1177.

### b. Dr. Clarissa A. Doi, M.D.

Dr. Clarissa A. Doi, M.D., conducted a physical examination of Plaintiff on March 27, 2015. AR 1576–78. Dr. Doi diagnosed Plaintiff with fibromyalgia, and reported that Plaintiff informed her that previously prescribed medications were not helpful. AR 1578. Dr. Doi filled out a fibromyalgia questionnaire on August 9, 2016, indicating that the last exam was July 14, 2016 and that she sees Plaintiff "every few months." AR 2036. Dr. Doi opined that Plaintiff experienced fibromyalgia manifestations such as dizziness, fatigue and tiredness, headaches, muscle weakness, nausea / vomiting, and gastrointestinal symptoms. AR 2037. She also concluded that Plaintiff had to avoid continuous sitting in an 8-hour work day, could only stand or walk for less than 1 hour in an 8-hour work day, and could never, or rarely, lift or carry objects, even objects less than 5 pounds. AR 2039.

### c. Dr. Amy I-Hui Chuang, M.D.

Dr. Amy I-Hui Chuang first examined Plaintiff on June 4, 2015. AR 1733. Dr. Chuang found that Plaintiff complained of chronic pain and became depressed because of the pain. *Id*. Dr. Chuang saw Plaintiff again on July 9, 2015. AR 1787. Her progress notes indicate that Plaintiff told Dr. Chuang that she started exercising and that Plaintiff "goes to the gym and does treadmill, swimming, stretching." *Id*. The July 2015 exam was her most recent exam before Dr. Chuang completed a fibromyalgia questionnaire on August 23, 2015. AR 2041. Dr. Chuang had similar

4

findings as Dr. Doi, and opined that Plaintiff could not sit or stand still for more than 15 minutes at a time. AR 2041–45. On April 4, 2016, Dr. Chuang wrote a letter explaining that Plaintiff's diagnosis of fibromyalgia predated Dr. Chuang's first examination with her, and that the diagnosis was made because Plaintiff had multiple tender points. AR 2087. Dr. Chuang concluded that "because of her chronic pain," she may not be able to work in an 8-hour competitive environment. AR 2088. Dr. Chuang recommended exercise as treatment to Plaintiff. AR 2088.

        d.  <u>Dr. Marie President, M.D.</u>

Dr. Marie President, M.D., began seeing Plaintiff in approximately 2003. AR 1172. In May 2012, Dr. President found that Plaintiff had an onset of depression and anxiety, connected to her chronic pain. *Id.* Dr. President did not treat Plaintiff for her upper extremity pains and stated that she could not comment on those conditions. *Id.* She only treated Plaintiff for her emotional conditions. *Id.* Dr. President completed an impairment questionnaire on April 11, 2014, and found that Plaintiff could only sit or stand for 1 hour in an 8-hour work day. AR 1358–62. She also opined that Plaintiff could frequently lift objects up to 5 pounds and occasionally lift objects 5 to 20 pounds, although she could never, or rarely, carry objects over 10 pounds. *Id.*

### 3. State-Agency Consultative Examining Physician

        a.  <u>Dr. Rose Lewis, M.D.</u>

On December 29, 2014, State-agency consultative physician Dr. Rose Lewis, M.D. reviewed Plaintiff's records and performed a physical examination. AR 1580–84. Dr. Lewis found that there were multiple trigger points at the base of Plaintiff's neck and skull, and also found tenderness in the shoulder blades. AR 1583. Dr. Lewis diagnosed Plaintiff with fibromyalgia and chronic fatigue syndrome, and found that Plaintiff had full motor strength and could stand and walk up to 4 hours in a work-day. AR 1583. She indicated that there were no sitting limitations, and Plaintiff could carry and lift up to 20 pounds occasionally and 10 pounds frequently. AR 1584. Dr. Lewis did not find any limitations in overhead activities. *Id.* On April 27, 2015, Dr. Lewis completed a medical source statement reflecting Plaintiff's ability to do work-related activities, with her findings from the evaluation. AR 1585–90.

**B.      Legal Framework of the Social Security Act**

To qualify for DIB, the claimant must be "disabled" as defined by the Social Security Act ("Act").  Both benefit programs define disability as an individual's inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also* 20 C.F.R. § 404.1505; *id.* § 416.905.  The SSA deems a person disabled only if:

> [H]is physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A); *id.* § 1382c(a)(3)(B).

**1.      Five-Step Process for Evaluating Claimant's Disability Claim**

When the claimant is dissatisfied with the initial and reconsidered decisions by the SSA, the claimant may request a hearing in front of an administrative law judge ("ALJ").  20 C.F.R. §§ 404.929, 416.1429.  The ALJ will issue a new decision based on the preponderance of the evidence developed in the hearing record and in the file.  *Id.* §§ 404.929, 416.1429.  To determine whether the claimant qualifies for disability benefits, the ALJ utilizes a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

a.      Step One: Substantial Gainful Work Activity.

At Step One, the ALJ determines whether the claimant is currently engaged in work activity that is substantial and gainful.  *Id.* § 404.1520(a)(4)(i), (b); *id.* § 416.920(a)(4)(i), (b).  Substantial work activity "involves doing significant physical or mental activities . . . even if it is done on a part-time basis" or requires "do[ing] less, get[ting] paid less, or hav[ing] less

6

responsibility than when [the claimant] worked before." *Id*. §§ 404.1572(a), 416.972(a). "Gainful work activity is work activity that [the claimant] do[es] for pay or profit . . . whether or not a profit is realized." *Id.* §§ 404.1572(b), 416.972(b). If the claimant is engaged in substantial gainful activity, then the claimant is not disabled, regardless of any medical condition or the claimant's age, education, or work experience. *Id.* § 404.1520(a)(4)(i), (b); *id.* § 416.920(a)(4)(i), (b).

### b. Step Two: Medical Severity of Impairment

If the claimant is not presently engaged in substantial gainful activity, then the ALJ determines whether the claimant's alleged impairments are medically severe. *Id.* § 404.1520(a)(4)(ii), (c); *id.* § 416.920(a)(4)(ii), (c). If the claimant lacks "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities," then the impairments are not severe. *Id.* §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a). "Basic work activities" are "the abilities and aptitudes necessary to do most jobs," including physical functioning, sensory capacity, following instructions, use of judgment, and responding appropriately to routine work situations (including supervision and interactions with coworkers), and dealing with changes to work routines. *Id.* §§ 404.1521(b), 416.921(b). Additionally, "[u]nless [the claimant's] impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months." *Id.* §§ 404.1509, 404.1520(a)(4)(ii), 416.909, 416.920(a)(4)(ii). If the claimant does not meet these requirements, then he is not disabled, regardless of any medical condition or the claimant's age, education, or work experience. *Id.* § 404.1520(a)(4)(ii), (c); *id.* § 416.920(a)(4)(ii), (c).

### c. Step Three: Listed Impairment

If the claimant has a severe impairment, the ALJ proceeds to Step Three and determines whether the claimant's impairment, or combination of impairments, medically "meets or equals" an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1 ("App. 1"). *Id*. § 404.1520(a)(4)(iii), (d); *id*. § 416.920(a)(4)(iii), (d); *see also id.* §§ 404.1525, 416.925 (describing Appendix 1's purpose, organization, and use). A claimant's impairment is medically equivalent to a listed impairment if it is "at least equal in severity and duration to the criteria of any listed impairment." *Id.* §§ 404.1526(a), 416.926(a). If the claimant's impairment meets or exceeds the requirements of

1    a listed impairment, the claimant is disabled, regardless of age, education, and work experience.

2    *Id.* § 404.1520(a)(4)(iii), (d); *id.* § 416.920(a)(4)(iii), (d).

3        The listings for Musculoskeletal impairments in Appendix 1 are arranged into seven

4    diagnostic categories, including disorders of the spine (1.04). App. 1 § 1.01. Listing 1.04 requires

5    a disorder of the spine resulting in compromise of a nerve root or the spinal cord with either

6    evidence of nerve root compression characterized by neuro-anatomic distribution of pain,

7    limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle

8    weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back,

9    positive straight-leg raising test (sitting and supine); spinal arachnoiditis, confirmed by an

10   operative note or pathology report of tissue biopsy, or by appropriate medically acceptable

11   imaging, manifested by sever burning or painful dysesthesia, resulting in the need for changes in

12   position or posture more than once every two hours; or lumbar spinal stenosis resulting in

13   pseudoclaudication, established by findings on appropriate medically acceptable imaging,

14   manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate

15   effectively. App. 1 § 1.04(A)–(C).

16           d.  <u>Step Four: Residual Functioning Capacity and Past Relevant Work</u>

17       If the claimant does not have a listed impairment, then at Step Four, the ALJ assesses the

18   claimant's residual functional capacity ("RFC") and ability to perform past relevant work. 20

19   C.F.R. § 404.1520(a)(4)(iv), (e); *id.* § 416.920(a)(4)(iv), (e). The ALJ first assesses all the

20   relevant medical and other evidence in the record to determine the claimant's RFC. *Id.*

21   §§ 404.1520(e), 416.920(e). The claimant's RFC gauges the most the claimant can do despite the

22   claimant's limitations. *Id.* §§ 404.1545(a)(1), 416.945(a)(1). Before making a determination, the

23   SSA is responsible for developing the claimant's complete medical history. *Id.* §§ 404.1545(a)(3),

24   416.945(a)(3).

25       In the RFC assessment, the ALJ assesses the claimant's physical and mental abilities, as

26   well as other abilities affected by the claimant's impairments. *Id.* §§ 404.1545(b)–(d),

27   416.945(b)–(d). With respect to a claimant's physical abilities, "[a] limited ability to perform

28   certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying,

8

pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce [a claimant's] ability to do past work and other work." *Id.* §§ 404.1545(b), 416.945(b). With respect to a claimant's mental abilities, "[a] limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting, may reduce [the claimant's] ability to do past work and other work." *Id.* §§ 404.1545(c), 416.945(c). Additionally, "[s]ome medically determinable impairment(s), such as skin impairment(s), epilepsy, impairment(s) of vision, hearing or other senses, and impairment(s) which impose environmental restrictions, may cause limitations and restrictions which affect other work-related abilities." *Id.* §§ 404.1545(d), 416.945(d).

Next, the ALJ compares the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* §§ 404.1520(f), 416.920(f). If the ALJ determines that the claimant can still perform the past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(f), 416.920(f). "Past relevant work" is work that the claimant has done in the past 15 years, that qualifies as substantial gainful activity, and that has "lasted long enough for [the claimant] to learn to do it." *Id.* §§ 404.1560(b)(1), 416.960(b)(1). The ALJ will determine whether the claimant can do her past relevant work by evaluating the claimant's testimony on work performed in the past. *Id.* §§ 404.1560(b)(2), 416.960(b)(2). In addition, the ALJ may evaluate the testimony of other people familiar with the claimant's past work, the opinions of a vocational expert ("VE"), or other resources, such as the Department of Labor's Dictionary of Occupational Titles. *Id.* §§ 404.1560(b)(2), 416.960(b)(2). If the claimant is found not capable of performing past relevant work at Step Four, then the burden of proof shifts to the Commissioner of the SSA ("Commissioner") to prove that the claimant is not disabled at Step Five. *See Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001).

e. Step Five: Adjustment to Other Work

If the claimant cannot perform past relevant work, then at Step Five the ALJ determines whether the claimant can adjust to other work based on the claimant's age, education, work

experience, and RFC. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At Step Five, the ALJ uses the RFC assessment from Step Four to determine whether the claimant can adjust to other work. *Id.* §§ 404.1560(c)(1), 416.920(c)(1). If the ALJ determines that "other work exists in significant numbers in the national economy that [the claimant] can do," then the ALJ will find that the claimant is not disabled. *Id.* §§ 404.1560(c)(2), 416.920(c)(2). The ALJ may meet her Step Five burden in two ways: "(1) the testimony of a VE or (2) by reference to the Medical–Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2." *See Osenbrock v. Apfel*, 240 F.3d 1157, 1161 (9th Cir. 2001).

## C. Procedural History

### 1. SSA Decision

On June 25, 2013, Plaintiff applied for DIB, alleging that she had been disabled since January 1, 2011, later amended to May 12, 2013. AR 131. The SSA denied Plaintiff's application both initially and upon reconsideration. AR 131–41. By Plaintiff's request, Administrative Law Judge Brenton L. Rogozen held an administrative hearing on April 17, 2015. AR 39–64. On May 26, 2015, the ALJ issued an opinion denying Plaintiff's DIB application. AR 131–41. Following Plaintiff's request for review, the Appeals Council remanded the claim for a new hearing and decision. AR 149–51. The ALJ held another hearing on February 10, 2016. AR 65–93. Plaintiff testified at the hearing in February 2016, as did Darlene McQuary, an impartial Vocational Expert. *Id.* On November 3, 2016, the ALJ issued an opinion, again denying Plaintiff's DIB application. AR 19–32. The Appeals Council denied Plaintiff's subsequent request for review. AR 1–4.

At Step One, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since the disability onset date, such that a finding of disability was not precluded by work activity. AR 22.

At Step Two, the ALJ determined Plaintiff had the following severe impairment: fibromyalgia and chronic pain syndrome. *Id.* The ALJ found that Plaintiff's impairments were established by the medical evidence in the record and caused "more than a minimal limitation on the claimant's ability to perform basic work activities." *Id.* The ALJ found Plaintiff's alleged impairments of headaches and gastrointestinal conditions non-severe. AR 22–23. The ALJ also

found Plaintiff's alleged mental impairments of anxiety and depression non-severe. AR 23–25. Consequently, the ALJ determined that there was insufficient evidence indicating work-related limitations based on Plaintiff's alleged headaches, gastrointestinal conditions, and mental impairments. AR 22–25.

At Step Three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in Appendix 1. AR 26. The ALJ determined that the medical evidence of Plaintiff's impairments, either "singly or in combination, [had] never met or medically equaled the requirements of a listed impairment as described at [] Appendix 1." *Id.*

At Step Four, the ALJ determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. 404.1567(b), except:

> [Plaintiff] can sit for eight hours out of an eight-hour workdays [sic]; can stand and/or walk for four hours out of an eight-hour workday; can reach, handle, and finger frequently; must avoid unprotected heights; and can endure only occasional exposure to extreme heat and/or cold.

*Id.* In reaching that determination, the ALJ considered opinion evidence, as well as all symptoms and the extent to which the symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence. AR 26. The ALJ noted that he followed a mandatory two-stage analysis in considering the Plaintiff's symptoms, considering first, whether Plaintiff had an underlying medically determinable physical or mental impairment; and if so, the extent to which the intensity, persistence, and limiting effects of Plaintiff's symptoms limited her functioning. *Id.*

With respect to the first inquiry, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. AR 26–27. Based on Plaintiff's testimony and her diagnosis of fibromyalgia, the ALJ found that the symptoms were expected. *Id.*

At the second stage, the ALJ gave great weight to the opinions of the State-agency physician Dr. Lewis, and gave limited or no weight to the opinions of Dr. Jayakar, Dr. President, Dr. Chuang, and Dr. Doi. AR 27–30. In doing so, the ALJ determined that the medical evidence

of record did not support the extent of Plaintiff's subjective complaints. *Id*. The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her impairments were not entirely credible because they were inconsistent with her own testimony and unsupported by the medical evidence of record. *Id*. Specifically, the ALJ found significant that Plaintiff began suffering some of her current symptoms years before her alleged onset date, but Plaintiff continued to work for many years. AR 27. Plaintiff's complaints were also inconsistent with the medical records, physical examinations, and her reported daily activities. *Id*. Although Plaintiff testified that her pain became so intolerable that she had to cease working, physical examinations demonstrated mild results and did not show that her symptoms worsened. AR 27–28. Other evidence in the record did not indicate objective findings upon physical examinations, but rather Plaintiff's subjective allegations of pain. AR 28. Plaintiff also admitted that she did not have a problem sitting or standing a month before the alleged onset date. AR 27.

The ALJ gave great weight to Dr. Lewis's opinion that Plaintiff had full range of motion in all body parts examined and undiminished motor strength in her upper and lower extremities. AR 29–30. Dr. Lewis found that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently with occasional postural activities, although she opined that Plaintiff could not encounter unprotected heights or extreme temperatures and should avoid repetitive motor movements. AR 29. The ALJ gave great weight to that finding because it was reliable and consistent with objective findings, and was done after an in-depth and in-person evaluation of Plaintiff. *Id.*

The ALJ gave limited weight to Dr. Jayakar's opinion from May 2013 that Plaintiff could only sit for 3 hours and stand or walk for 1 hour in an 8-hour work day. AR 28. The ALJ observed that this was unsupported by Dr. Jayakar's treatment records, as she did not assess Plaintiff's physical ability to lift, push, pull, sit, stand, or walk, but only Plaintiff's limited range of motions in areas affected by the myofascial pain (upper extremities). *Id*. The ALJ did give more weight to Dr. Jayakar's recent opinion from January 2014, finding that Plaintiff could stand, walk, and sit for 4 hours, but was limited in heavy lifting and performing repetitive movements, because it was consistent with Dr. Jayakar's own treatment records. AR 29.

The ALJ gave no weight to Dr. President's opinion concerning Plaintiff's functional limitations, because Dr. President did not treat Plaintiff for her physical impairments but treated her for depression and anxiety. *See id.* Dr. President herself stated that she did not treat Plaintiff's physical conditions. *Id.* Further, the ALJ found that the records from Dr. President were letters excusing Plaintiff from work. *Id.* The ALJ also gave little or no weight to Dr. Doi and Dr. Chuang, as there was no objective medical evidence to support the extreme limitations in their fibromyalgia questionnaires. AR 30. The ALJ also observed that Dr. Chuang rendered her opinion after only a couple months with Plaintiff, thereby diminishing the weight given to Dr. Chuang's evaluation. *Id.* The ALJ concluded that Dr. President, Dr. Doi, and Dr. Chuang's findings were not supported by objective evidence and were contradicted by Plaintiff's own testimony and reported activities. AR 29–30.

Finally, the ALJ found Plaintiff was capable of performing past relevant work as a supervisor of electronics production. AR 30–31. The work did not require the performance of the limitations based on Plaintiff's RFC (prohibiting heavy lifting and repetitive movements). AR 30. The ALJ considered the vocational expert's testimony that Plaintiff could perform the work required at the sedentary level. AR 31. The ALJ also considered Plaintiff's RFC, medical opinions, limitations, and past work experience to determine Plaintiff could perform the requirements of her past work. *Id.*

Because the ALJ found that Plaintiff was capable of performing past relevant work, he did not proceed to Step Five. Based on this conclusion, the ALJ determined that Plaintiff is not disabled under the SSA, and thus not entitled to the benefits for which she applied. AR 32.

On April 12, 2017, the Appeals Council denied Plaintiff's request for review of the ALJ's second decision, applying the laws, regulations, and rulings in effect at the time of the ALJ's ruling. AR 1–4. Thus, the ALJ's decision became the Commissioner's final decision regarding Plaintiff's application. AR 1.

### 2. Judicial Appeal

On June 13, 2017, Plaintiff filed this appeal challenging Defendant's final denial of disability benefits. Plaintiff's primary argument on appeal is that: (1) the ALJ did not properly

weigh the medical opinion evidence of Plaintiff's physicians, and (2) the ALJ did not properly evaluate Plaintiff's testimony. Pl. Mot. at 12–19. Defendant responds that the ALJ properly considered the medical evidence in determining Plaintiff's RFC and properly explained why he did not fully accept Plaintiff's subjective complaints. Def. Mot. at 3–7. On March 5, 2019, Plaintiff's counsel filed a letter with the Court raising a new objection: that under *Lucia v. SEC*, 138 S. Ct. 2044 (2018), the ALJ was not constitutionally appointed at the time he decided to deny Plaintiff's application for disability benefits, and therefore the case should be remanded for a new hearing in front of a constitutionally appointed ALJ. Dkt. No. 15.

## II.  STANDARD OF REVIEW

The Court has jurisdiction to review final decisions of the Commissioner. *See* 42 U.S.C. § 405(g) ("The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."). The Court may disturb the Commissioner's decision to deny benefits only if the decision is either not supported by substantial evidence, or is based on legal error. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. The evidence must be more than a mere scintilla, but may be less than a preponderance." *Molina v. Astrue*, 674 F.3d 1104, 1110–11 (9th Cir. 2012) (internal quotation marks and citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

The Court must consider the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). The ALJ is responsible for making determinations of credibility and for resolving evidentiary ambiguities, including conflicting medical testimony. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Additionally, the Court "may not reverse an ALJ's decision on account of an error that is harmless. The burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Molina*, 674

F.3d at 1111 (internal quotation marks, brackets, and citations omitted).

III.    **DISCUSSION**

The Court addresses Plaintiff and Defendant's contentions regarding the ALJ's finding of non-disability, specifically: (1) the ALJ's evaluation of medical evidence; (2) the evaluation of Plaintiff's credibility; and (3) the Appointments Clause challenge.

A.    **Evaluation of Medical Evidence**

Plaintiff argues that the ALJ failed to properly weigh the opinions of Plaintiff's treating physicians, Dr. Jayakar, Dr. President, Dr. Doi, and Dr. Chuang. AR 12–17. Specifically, Plaintiff contends that the ALJ erred by rejecting the opinions "primarily on the basis that [the ALJ] concluded they were not supported by 'objective medical evidence.'" AR 13. However, the Court finds that the ALJ gave specific and legitimate reasons supported by substantial evidence for giving little or no weight to Dr. Jayakar, Dr. President, Dr. Doi, and Dr. Chuang's opinions. See *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Therefore, the ALJ did not err on this basis.

The ALJ, when determining whether Plaintiff has a medically determinable impairment, will always consider medical opinions and the relevant evidence received. 20 C.F.R. § 404.1527(b). There are "three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester*, 81 F.3d at 830. As a general rule, more weight is generally given to the treating physician's opinion, but it "is not . . . necessarily conclusive as to either a physical condition or the ultimate issue of disability." *Magallanes*, 881 F.2d at 751. "The ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted." *Id*. If the treating physician's opinion is contradicted by other opinions, then the ALJ must provide "specific and legitimate reasons supported by substantial evidence in the record" for rejecting the treating physician's opinion. *Lester*, 81 F.3d at 830 (quotations omitted).

Contrary to Plaintiff's assertions, the ALJ did not reject the opinions of the physicians "primarily on the basis that [the ALJ] concluded they were not supported by 'objective' medical

15

evidence." AR 13. As to Dr. President, the ALJ concluded that he gave no weight to Dr. President's opinion because of the limited nature of Dr. President and Plaintiff's relationship. AR 29. As the ALJ noted, the only record evidence from Dr. President were "a mere four pages" that do not provide treatment records of Plaintiff's condition, but rather, were letters excusing Plaintiff from work. *Id.*; *see also* AR 1172–73. As the ALJ noted, Dr. President did not treat Plaintiff for fibromyalgia or upper extremity pain, but instead treated Plaintiff for depression and anxiety. AR 1172 ("Ms. Allen was treated by other physicians for her pain and shoulder tendonitis, therefore I will not comment on those conditions."); *see also* 20 C.F.R. § 404.1527(c)(3) (giving less weight to medical opinion of a source who is not a specialist). Further, while Dr. President, in the impairment questionnaire, concluded that Plaintiff could not sit or stand for an hour, there was nothing in the form explaining how Dr. President formulated these conclusions. *See* AR 1358–62. Indeed, Dr. President's review was based on Plaintiff's subjective reporting and a review of other medical records. AR 1172–73. Therefore, the ALJ gave no weight to Dr. President's opinion in the impairment questionnaire form because it was unaccompanied by any explanation for her findings. AR 29. The ALJ therefore permissibly rejected the impairment questionnaire. *See Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (finding that the ALJ permissibly rejected check-off reports that did not contain any explanation of the bases of their conclusions).

The ALJ gave no weight to Dr. Chuang because of the limited time Dr. Chuang saw Plaintiff before she completed the fibromyalgia questionnaire. AR 30. Dr. Chuang's first appointment with Plaintiff was on June 4, 2015, a couple months before she completed the fibromyalgia questionnaire on August 23, 2015. AR 1733. Prior to completing the questionnaire, she saw Plaintiff one other time in July. *See* AR 2041. Based on the limited length of time, the ALJ gave no weight to Dr. Chuang's opinion. *See Holohan v. Massanari*, 246 F.3d 1195, 1203 n.2 (9th Cir. 2001) (a treating physician may be entitled to little if any weight if "the treating physician has not seen the patient long enough to 'have obtained a longitudinal picture' of the patient's impairments"); 20 C.F.R. § 404.1527(c)(2) ("[T]he longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion").

Similar to Dr. President, for both Dr. Chuang and Dr. Doi, the ALJ gave no weight to their opinions in the fibromyalgia questionnaires because there was no objective evidence to support these extreme limitations of Plaintiff's inability to sit for more than an hour in a work day. AR 30. Both doctors' fibromyalgia questionnaires did not provide explanations for the basis of their findings and conclusions. AR 2036–45. An "ALJ need not accept a treating physician's opinion which is brief and conclusionary in form with little in the way of clinical findings to supports [its] conclusions." *Magallanes*, 881 F.2d at 751. Further, the ALJ also found that their findings were inconsistent with treatment recommendations, and Plaintiff's own testimony and reported activities. AR 30. For example, Dr. Chuang concluded that Plaintiff could not sit or stand for more than 15 minutes, yet Dr. Chuang also prescribed Plaintiff exercise as treatment. *Id.*; *see* AR 2088. And Plaintiff told Dr. Chuang that she started going to the gym, indicating she had more physical capability than expressed in the questionnaires. AR 1787. Contrary to Plaintiff's assertion, the ALJ did not err in his consideration of Dr. Doi and Dr. Chuang's opinions. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600–02 (9th Cir. 1999) (considering an inconsistency between a treating physician's opinion and a claimant's daily activities a specific and legitimate reason to discount the treating physician's opinion).

Finally, with respect to Dr. Jayakar, the ALJ did not find her opinions about Plaintiff's limitations in her ability to sit, stand, or walk persuasive because they were unsupported by Dr. Jayakar's own treatment records. AR 28. However, he did accord some weight to Dr. Jayakar's more recent opinion from January 2014, because he found it was more consistent with the doctor's own records. AR 29. Upon review of the administrative record, the Court agrees and finds that the ALJ identified specific and legitimate reasons as support. Dr. Jayakar's medical records indicate that throughout 2012 and 2013, there were no significant changes in clinical findings and Plaintiff's objective examinations. *See* AR 859–75. Dr. Jayakar's records also consistently noted tenderness in Plaintiff's back muscles and mild restriction and pain in Plaintiff's shoulders and upper extremities. *Id.* Therefore, Dr. Jayakar found that Plaintiff was capable of going back to her work, but should limit repetitive pinching, gripping, torqueing with her hands, carry no more than 5 pounds, and limit pushing and pulling to 25 pounds. AR 859–66. This was recorded in Dr.

17

Jayakar's January 16, February 13, April 3, and May 8, 2013 reports. There were, however, no listed limitations in any of these records as to Plaintiff's ability to sit, stand, or walk until the May 2013 questionnaire, where she concluded that Plaintiff could only stand or walk for 1 hour, and sit for 3 hours. *See* AR 1163–70. Then, a little more than a year later, Dr. Jayakar completed a functional capacity questionnaire, but this time concluded that Plaintiff could sit or stand for a total of 4 hours. AR 1177–81. Therefore, the ALJ permissibly discounted Dr. Jayakar's opinion regarding the restrictions as to Plaintiff's ability to sit, stand, and walk as inconsistent and not supported by Dr. Jayakar's own medical records. AR 29. At the same time, the ALJ gave weight to Dr. Jayakar's opinion finding that Plaintiff was unable to engage in heavy lifting and repetitive hand movements, since the latter restrictions were consistent with Dr. Jayakar's records. AR 29; *see Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (an ALJ may evaluate medical opinions based on their consistency with the record); 20 CFR § 404.1527(c)(4) (consistency with the record as a whole is a valid factor for weighing medical opinions).[1]

Plaintiff also asserts that the ALJ's reliance on findings from Dr. Lewis "was particularly misplaced here." Pl. Mot. at 16. Dr. Lewis had opined that Plaintiff could stand and walk up to 4 hours in a day, did not have limitations in sitting, could carry 20 pounds occasionally and 10 pounds frequently, but had limitations with grip, heights, and heavy machinery. AR 1583–84. For the ALJ to place more weight on the opinion of an examining physician than a treating physician, the ALJ must set forth specific, legitimate reasons for doing so based on substantive evidence in the record. *Orn*, 495 F.3d at 632; *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) ("When there is a conflict between the opinions of a treating physician and an examining physician, [ ] the ALJ may disregard the opinion of the treating physician only if he sets forth "'specific and legitimate reasons supported by substantial evidence in the record for doing so.'").

---

[1] Plaintiff contends that the ALJ used "faulty logic" when rejecting Dr. Jayakar's 2013 opinion, because, Plaintiff argues, it would be "highly unusual for Dr. Jayakar to record work-related limitations in the treatment notes for the claimant." Pl. Mot. at 15. The Court rejects this argument, and notes that each of Dr. Jayakar's treatment records contains a "Work Status" section where Dr. Jayakar consistently noted Plaintiff's limitations with heavy lifting and repetitive pinching, gripping, and torqueing. *See* AR 859–66.

Plaintiff's argument and citations to out-of-circuit cases are not persuasive. The ALJ offered three reasons to support the significant weight he gave Dr. Lewis's opinion. First, the ALJ noted that Dr. Lewis's examination was based on an in-depth and in-person evaluation of Plaintiff. AR 29. Acknowledgment of the examining relationship between a doctor and the claimant is persuasive. *See* § 404.1527(c)(1) (when weighing medical opinions, more weight should be afforded "to the medical opinion of a source who has examined [the claimant] than to the opinion of a source who has not"). That Plaintiff's physicians also examined Plaintiff in person does not negate the persuasive value of Dr. Lewis's examining relationship with Plaintiff. Second, the ALJ found that Dr. Lewis's evaluation was consistent with the objective findings noted, including past medical records and those of Dr. Jayakar. AR 15; *see* 20 CFR § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"). Dr. Lewis found multiple trigger points at the base of Plaintiff's neck and tenderness in her upper extremities, consistent with other findings and Plaintiff's allegations of pain. AR 29; *see* AR 1580–84. Dr. Lewis also noted limitations to Plaintiff's ability to perform repetitive and fine motor movements, consistent with Dr. Jayakar's limitations and Plaintiff's reporting of her own activities. AR 29–30; *see* AR 1580–84 (Plaintiff states "she is not able to do vacuuming, mopping, or the laundry because of the fatigue and because of the pain in her wrists," but she could still cook, drive, watch television, and do stretching exercises). Third, the ALJ noted Dr. Lewis's 40 years of clinical experience as a board-certified surgeon and familiarity with performing consultative examinations. AR 29; *see* 20 CFR § 404.1527(c)(6) (recognizing the "amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has"). These all constitute specific, legitimate reasons for giving the doctor's opinion significant weight.

Given the substantial evidence in the record supporting the ALJ's determination (even if that evidence could be susceptible to more than one rational interpretation), the Court finds that the ALJ did not err in affording the opinions of Plaintiff's treating physicians little or no weight and affording Dr. Lewis's opinion significant weight.

**B.    The ALJ's Credibility Analysis**

Plaintiff argues that the ALJ erred in finding Plaintiff's statements about the intensity, persistence, and limiting effects of the symptoms "not entirely credible." Pl. Mot. 17–19.  The Court disagrees.

Absent affirmative evidence or an explicit finding of malingering, the ALJ may reject a Plaintiff's testimony only with clear and convincing reasons supported by substantial evidence. *See Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011) (absent explicit finding of malingering, clear and convincing standard applies).  The ALJ is the sole judge of the claimant's credibility.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  The ALJ relies on "ordinary techniques of credibility evaluation," such as (1) inconsistencies either in the testimony or between the testimony and the claimant's conduct, (2) variations between the claimant's daily activities and his symptoms, and (3) the medical record including observations of the claimant's symptoms.  *Molina*, 674 F.3d at 1112 (citation and quotations omitted); *see Thomas*, 278 F.3d at 958-59; SSR 96-7p.

The Court finds that the ALJ articulated clear and convincing reasons supported by substantial evidence to conclude that Plaintiff's testimony was not entirely credible.  The ALJ found that MRIs in 2003 revealed degenerative disc disease of Plaintiff's spine and minimal disc desiccation in Plaintiff's lumbar spine.  AR 27.  He also found that the electrodiagnostic studies indicated nerve damage to Plaintiff's upper extremities as early as 1995.  *Id*.  The ALJ therefore found that "claimant began suffering at least some of her current symptoms years before her alleged onset date and yet, she continued working."  *Id*.  This is bolstered by Plaintiff's own testimony:  she admitted to feeling pain since around 1992, but still worked as a tube technician and then an electronics supervisor for almost 20 more years.  AR 27, 54.

The ALJ also found that despite Plaintiff's testimony of her worsening pain, the record does not demonstrate worsening symptoms.  AR 27.  As discussed above, Dr. Jayakar's medical records concluded that throughout 2012 and 2013, there were no significant changes to Plaintiff's objective physical condition.  *See* AR 859–75.  A month before Plaintiff's alleged onset disability date, Plaintiff went through a chronic pain program interdisciplinary evaluation and exhibited

normal range of motion in her spine and shoulders. AR 27.

As already discussed, the ALJ also found Plaintiff's subjective complaints of her pain inconsistent with her descriptions of daily activities and her testimony. She expressed to Dr. Chuang that she started going to the gym and doing exercises such as swimming, stretching, and going on the treadmill. AR 1787. She testified that she was able to run errands such as pay her bills on her iPad, check her email, and drive for around 20 to 30 minutes. AR 52. Plaintiff goes to physical therapy, AR 77, and told Dr. Lewis that she could still cook, watch television, and do stretching exercises. AR 1580–84. Therefore, the ALJ concluded that she was capable of daily living activities. AR 24–25; *see also Thomas*, 278 F.3d at 958-59 (ALJ properly discounts credibility based on ability to perform basic household chores); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (holding ALJ's reason was adequate where he provided that claimant's restrictions were "inconsistent with the level of activity that Rollins engaged in by maintaining a household and raising two young children").

The Ninth Circuit has recognized the above factors as sufficient reasons supporting an ALJ's decision to find a claimant's testimony less credible. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) ("In weighing a claimant's credibility, the ALJ may consider [her] reputation for truthfulness, inconsistencies either in [her] testimony or between [her] testimony and [her] conduct, [her] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [she] complains.") Because the ALJ provided clear and convincing reasons for discounting Plaintiff's credibility, there is no error in the ALJ's credibility determination.

The Court does not find Plaintiff's arguments to the contrary persuasive. Plaintiff contends that the ALJ failed to understand the nature of the medical findings associated with fibromyalgia. Pl. Mot. at 19. But the ALJ did not dispute that Plaintiff has fibromyalgia or chronic pain syndrome: instead, he questioned the intensity, persistency, and limiting effects of Plaintiff's impairment based on Plaintiff's own testimony of her daily activities. AR 22–29. Plaintiff cites to *Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 2013), for the proposition that because Plaintiff produced medical evidence of an underlying impairment, "no particular objective medical

findings are required to support the alleged severity of her symptoms." Pl. Mot. at 19. The Ninth Circuit did not make such a definitive ruling. Rather, it held that objective medical findings were *not required* to corroborate the severity of pain. *Bunnell*, 947 F.2d at 346. However, while objective medical findings were not required, a claimant's "subjective complaint of pain is *by itself* insufficient to establish disability." *Id*. at 347 (quotations omitted and emphasis in original). Factors that the ALJ should consider when assessing the severity of pain included functional restrictions and daily activities, factors that the ALJ in this action did consider when assessing Plaintiff's alleged severity of pain. *See id*. at 346.

Plaintiff also asserts that her ability to work in the past with pain does not support the ALJ's assumption that her pain did not increase over time. Pl. Mot. at 19. Plaintiff cites *Nabhani v. Colvin*, 2014 WL 940546 (N.D. Cal Mar. 5, 2014), as support. *Id*. *Nabhani* does not help Plaintiff. The *Nabhani* court held that the ALJ did not err in discrediting claimant's testimony because of his continuing employment past the alleged onset disability date. *Nabhani*, 2014 WL 940546, at *12. Although attempts to work for a short period past the alleged onset date do not necessarily support a finding of adverse credibility, a continued ability to work could support a finding of adverse credibility. *Id*. Here, the ALJ found that Plaintiff worked for more than twenty years after her chronic back pain began. AR 27. She ceased working by the time of her amended onset disability date, though the record could support the inference that this may have been because she was terminated and unhappy with her demoted position. AR 874, 882. The evidence sufficiently supports the ALJ's finding of adverse credibility, and the Court will not second-guess the ALJ's evaluation in light of the substantial evidence and deference that must be given to the ALJ's decisions. *See Nabhani*, 2014 WL 940546, at *12.

### C.    Appointments Clause Challenge

Plaintiff's counsel, in a letter filed with the Court on March 5, 2019, contends that under the Supreme Court's decision in *Lucia v. SEC* and a July 10, 2018 Executive Order ("Executive Order"), the ALJ was not constitutionally appointed and therefore plaintiff is entitled to a new hearing. Dkt. No. 15.

The Supreme Court in *Lucia* held that ALJs of the Securities and Exchange Commission

("SEC") are "Officers of the United States," subject to the Appointments Clause of Article II of the United States Constitution. *Lucia*, 138 S. Ct. 2055. The Executive Order extended *Lucia*'s holding to all ALJs, even though *Lucia* was a narrow holding limited to the ALJs of the SEC. Nonetheless, in *Lucia*, the Supreme Court recognized that a challenge to the constitutional validity of an ALJ must be timely made. *Id*. at 2055.

Plaintiff did not make a timely challenge to the validity of the ALJ appointment. In *Lucia*, plaintiff "contested the validity of [the ALJ's] appointment before the Commission." *Id*. By contrast, Plaintiff did not raise an Appointments Clause challenge at the administrative level or at any other time before the March 5, 2019 letter. Plaintiff's counsel acknowledges this, and instead proffers that Plaintiff may raise the challenge for the first time under *Sims v. Apfel*, 530 U.S. 103, 110 (2000). Dkt. No. 15. The Court is not persuaded. *Sims* stands for a different proposition. The Supreme Court there held that a plaintiff does not have to exhaust issues before the Appeals Council to preserve those for judicial review. *Id*. at 112. Therefore, the Court will follow the reasoning of other courts in this circuit in rejecting Appointments Clause arguments when the challenge was not timely made at the administrative level. *See, e.g. Kabani & Co. v. SEC*, 733 Fed. Appx. 918, 919 (9th Cir. 2018) ("petitioners forfeited their Appointments Clause claim by failing to raise it in their briefs or before the agency"), *petition for cert. docketed*, No. 18-1117 (U.S. Feb. 26, 2019); *Delores A v. Berryhill*, No. ED CV 17-254-SP, 2019 WL 1330314, at *10 (C.D. Cal. Mar. 25, 2019) ("Because plaintiff forfeited her challenge to the validity of the ALJ's appointment here when she did not raise her challenge at the administrative level, she is not entitled to relief on her Appointments Clause challenge"); *Hugues v. Berryhill*, No. CV 17-3892-JPR, 2018 WL 3239835, at *2 n.2 (C.D. Cal. July 2, 2018) ("To the extent *Lucia* applies to Social Security ALJs, Plaintiff has forfeited the issue by failing to raise it during his administrative proceedings.").

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion for Summary Judgment

and **GRANTS** Defendant's Motion for Summary Judgment.[2]  The ALJ's decision is affirmed.

The Clerk is directed to enter judgment in favor of Defendant and close the case.

**IT IS SO ORDERED.**

Dated: March 31, 2019

HAYWOOD S. GILLIAM, JR.
United States District Judge

---

[2] Plaintiff's motion states that "Ms. Buckles [sic] requests the decision of the Commissioner be reversed and that the manner be remanded solely for calculation and awarding of benefits."  Pl. Mot. at 19.  The Court notes that even if it were to grant summary judgment in favor of Plaintiff, it would only remand for further administrative proceedings and not for a calculation and award of benefits.  The record does not demonstrate a "rare circumstance" that would require the Court to conduct a *de novo* inquiry.  *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985).